INMATES OF the NEBRASKA PENAL AND CORRECTIONAL COMPLEX, Richard C. Walker, William Randolph, Richard J. Leary, Robert L. Gamron, Frederick L. Grant, Wayne Goham and Charles LaPlante, Appellees,

v.

John B. GREENHOLTZ, Individually, and as Chairman, Nebraska Board of Parole, Eugene E. Neal, Catherine R. Dahlquist, Marshall M. Tate, and Edward M. Rowley, Appellants.

No. 77–1889.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1978.

Decided May 18, 1978.

Rehearing and Rehearing En Banc Denied June 9, 1978.

eled here and is to be recommended in tax fraud cases such as this.

Ralph H. Gillan, Asst. Atty. Gen., Lincoln, Neb., argued, Paul L. Douglas, Atty. Gen., on brief, for appellants.

Brian Ridenour, Nelson, Harding, Yeutter, Leonard & Tate, Lincoln, Neb., for appellees.

Before HEANEY and STEPHENSON, Circuit Judges, and BECKER,[*] District Judge.

STEPHENSON, Circuit Judge.

The defendants-appellants, members of the state of Nebraska Board of Parole (Board), appeal from the decision of the district court [1] in this class action suit arising under 42 U.S.C. § 1983. The district court held that the plaintiffs-appellees, inmates of the Nebraska Penal Complex (inmates), had been denied procedural due process by the Board in the Board's consideration of the inmates for suitability for parole.

This case raises the question of whether the due process clause of the Fourteenth Amendment to the United States Constitution extends to parole release determinations, and if so, whether the safeguards

---

[*] The Honorable William H. Becker, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

currently available under applicable Nebraska law are constitutionally adequate. We affirm that the due process clause applies to parole release proceedings. With respect to the specific procedural safeguards which the district court found were constitutionally required in such proceedings, we affirm in part, reverse in part, and remand.

The Nebraska Board of Parole consists of five members. The chairman and two members are full-time, and the other two members serve on a part-time basis. Neb. Rev.Stat. § 83–191. Under Nebraska law the Board is charged with the responsibility of determining whether and when an inmate should be released on discretionary parole. Neb.Rev.Stat. §§ 83–192, 83–1,114, 83–1,115. The Board is required by statute to review at least once a year the record of each convicted offender, whether or not eligible for parole, and to meet with him and counsel him concerning his progress and prospects for a future parole. Neb. Rev.Stat. § 83–192(9). These parole review hearings last an average of five to ten minutes and the inmates are not allowed to present evidence or call witnesses in their behalf.

After the annual parole review hearing, each prisoner is sent a form which informs him whether or not he is to receive a formal parole hearing. If he does not receive a formal parole hearing the reasons for deferral at that time are stated and recommendations are made for correcting the deficiencies. Only those inmates who are eligible for discretionary parole are granted a formal parole hearing, but in some instances eligible inmates did not receive a timely formal parole hearing. Between July 1, 1975, and June 30, 1976, 327 formal parole hearings and 1,645 review hearings were held.

If the inmate is given a formal parole hearing, he is permitted to offer evidence in support of parole, and may be represented by retained counsel. He is not permitted to cross-examine or hear opposition witnesses. If he is denied parole after a formal parole hearing, he is so advised in person and by letter. Generally the letter advises him of the reasons for denial, although eight instances were found between January 1975 and November 1976 in which reasons were not contained in the letter.

Inmates are notified either at the time of their original confinement or at subsequent parole review hearings or formal parole hearings of the month during which their next hearing will be held. This general notification occurs from 30 days to 1 year in advance. Notification of the precise date and hour occurs through posting of such information at the penal complex on the date of the hearing.

In its order and memorandum opinion of October 21, 1977, the district court concluded that parole release proceedings must be conducted in accordance with certain due process requirements and that the Board's procedures failed to comply fully with those required procedures. The court further found that the inmates were not entitled to monetary damages, but did allow them to recover their costs, including reasonable attorney fees under 42 U.S.C. § 1988.

The initial issue confronting this court is whether parole determination proceedings implicate a liberty interest of the inmates within the meaning of the due process clause of the Fourteenth Amendment. We are convinced that it does.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Our inquiry of whether the prohibitions of the Fourteenth Amendment apply begins with the Supreme Court case of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), where the Court held that the due process clause was applicable to proceedings resulting in revocation of parole. In *Morrissey*, the Court articulated the proper framework for analysis of the question of whether due process applies in a particular situation.

Whether any procedural protections are due depends on the extent to which an individual will be "condemned to suffer grievous loss." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123,

168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring), quoted in *Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). The question is not merely the "weight" of the individual's interest, but whether the nature of the interest is one within the contemplation of the "liberty or property" language of the Fourteenth Amendment. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). *Morrissey v. Brewer, supra*, 408 U.S. at 481, 92 S.Ct. at 2600.

The interest asserted by the inmates in this suit is the present right to be considered for parole in accordance with certain procedural safeguards.[2] Since the state is not required by the Constitution to provide parole for convicted offenders, the inmates' interest is aptly described as a privilege or a matter of grace. However, this distinction is no longer an acceptable basis for determining where the due process clause applies to a governmental action. Chief Justice Burger, speaking for a majority of the Court in *Morrissey v. Brewer, supra*, 408 U.S. at 481, 92 S.Ct. at 2600, stated: "As Mr. Justice Blackmun has written recently, 'this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege." ' *Graham v. Richardson*, 403 U.S. 365, 374, [91 S.Ct. 1848, 29 L.Ed.2d 534] (1971)."

▮▮▮ In the present case the Board attempts to distinguish *Morrissey* as well as *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (due process applies to prison disciplinary proceedings where good time credit may be lost), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (due process applies to probation revocation proceeding), on the basis that those cases involved the loss of a privilege and here we are concerned with a denial of a privilege. That is a distinction without a real difference. *Bradford v. Weinstein*, 519 F.2d 728, 732 and n. 3 (4th Cir. 1974), *vacated as moot*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

> [The] present enjoyment of a protectable interest is not a prerequisite of due process. See *Goldsmith v. Bd. of Tax Appeals*, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926) (right of C.P.A. to practice before the Board of Tax Appeals); *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963), and *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (admission to the bar); *Speiser v. Randall*, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) (right to a tax exemption).

*Bradford v. Weinstein, supra*, 519 F.2d at 732 n. 3. *But see Brown v. Lundgren*, 528 F.2d 1050, 1052–53 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976). While the parole applicant's status is not changed by denial of his application, "in the sense that he remains in the same custodial situation as before the necessity of due process to support the denial is not therefore obviated, for the status remains the same because of a Board determination which if favorable would have changed the status to one of greater liberty." *Childs v. United States Board of Parole*, 167 U.S. App.D.C. 268, 511 F.2d 1270, 1280 (1974). The nature of the interest at stake in both parole release and parole revocation is the same—conditional liberty versus incarceration—and thus the Fourteenth Amendment applies to both.

The Board also claims that parole release determinations should be treated differently than the determinations involved in *Morrissey*, *Gagnon*, and *Wolff* because in these latter cases the respective boards were re-

---

**2.** Since it is the manner of parole decision-making, not its outcome, that is challenged, the inmates did not present a complaint of the sort in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), for which the inmates' sole federal remedy is a writ of habeas corpus. *See Wolff v. McDonnell*, 418 U.S. 539, 553–55, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Bradford v. Weinstein*, 519 F.2d 728, 733–34 (4th Cir. 1974), *vacated as moot*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

quired to make factual determinations and therefore hearings were appropriate. However, Neb.Rev.Stat. § 83-1,114 provides that a prisoner eligible for parole is to be released on parole unless he is found to be unfit for one of the reasons listed in the statute. Thus, the Board's decision ·of whether to grant parole necessitates a factual determination of whether the statutory criteria are present.

The deprivations which result from revocation of a conditional liberty enjoyed by a parolee described in *Morrissey v. Brewer, supra*, 408 U.S. at 481–82, 92 S.Ct. 2593, demonstrate the serious effects of denial of parole. Although a parolee is subject to many restrictions not applicable to other citizens, he is able to do a wide range of things available to persons who have never been convicted of a crime. "Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer, supra*, 408 U.S. at 482, 92 S.Ct. at 2600.

■ Since the protection of the due process clause extends to parolees, it may not be denied to inmates. While lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, an iron curtain is not drawn between the prisons of this country and the Constitution. *Wolff v. McDonnell, supra*, 418 U.S. at 555–56, 94 S.Ct. 2963. Prisoners may not be deprived of life, liberty, or property without due process of law. *Id.* at 556, 94 S.Ct. 2963.

■ The inmates are not the only ones with an interest in seeing that the parole determination proceedings are conducted in accordance with the due process clause. The Supreme Court recognized in *Morrissey v. Brewer, supra*, 408 U.S. at 484, 92 S.Ct. 2593, that society has a stake in the effort to restore the prisoner to a normal and useful life within the law. Thus, society has an interest in not having release on parole denied because of an erroneous determination. Society has a further interest in treating the prisoner with basic fairness.

Fair treatment in parole determinations "will enhance the chance of rehabilitation by avoiding reactions to arbitrariness." *Id.*

Of the six circuit courts of appeals which have decided the issue, four have held that the Fourteenth Amendment does apply to parole determination proceedings. *Franklin v. Shields*, 569 F.2d 784, 800 (4th Cir. 1978) (en banc); *United States ex rel. Richerson v. Wolff*, 525 F.2d 797 (7th Cir. 1975), *cert. denied*, 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976); *Childs v. United States Board of Parole, supra; United States ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole*, 500 F.2d 925 (2d Cir.), *vacated as moot*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974). *Contra, Scott v. Kentucky Parole Bd.*, No. 74–1899 (6th Cir. Jan. 15, 1975), *vacated and remanded to consider mootness*, 429 U.S. 60, 97 S.Ct. 342, 50 L.Ed.2d 218 (1976), *on remand sub nom. Bell v. Kentucky Parole Bd.*, 556 F.2d 805 (1977); *Scarpa v. United States Bd. of Parole*, 477 F.2d 278 (5th Cir.) (en banc), *vacated and remanded to consider mootness*, 414 U.S. 809, 94 S.Ct. 79, 38, L.Ed.2d 44, *dismissed as moot*, 501 F.2d 992 (5th Cir. 1973).

The Supreme Court has not decided the exact question before us of whether a prisoner's interest in prospective parole is an interest to be afforded protection under the due process clause of the Fourteenth Amendment. It must be acknowledged that there are indications both ways in recent Supreme Court opinions. *See discussion, Williams v. Ward*, 556 F.2d 1143, 1157–58 (2d Cir. 1977), *cert. dismissed*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323.

The Board primarily relies on the companion cases of *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), for its contention that parole determinations do not implicate the Fourteenth Amendment. In *Meachum*, the Supreme Court held that the due process clause did not entitle a prisoner to a hearing when he is transferred from one prison to another, absent a state law or practice conditioning such transfers on proof of serious misconduct or the occurrence of other events. .

We are not persuaded that the holdings of those cases are applicable to the present case. First, *Meachum* involved a transfer only from one prison to another, albeit with less favorable conditions, while here the Board's determination results in either conditional liberty or incarceration. Second, the holding of *Meachum* expressly excludes situations where a right was created by state law. The inmates' interest in this case, is the right to be considered for parole, a right created by Nebraska law.

In *Wolff v. McDonnell, supra,* 418 U.S. at 558, 94 S.Ct. 2963, the Court held that a person's liberty interests may be protected by the Fourteenth Amendment even when the liberty itself is a statutory creation of the state. The Court found that where the state had created a statutory right for a prisoner to have his sentence shortened for good conduct, and also specified that it was to be forfeited only upon serious misbehavior, the prisoner's interest was within the liberty protected by the Fourteenth Amendment. Therefore, we must examine the Nebraska statutes governing parole release determinations to ascertain if they create a liberty interest.

Under Nebraska law, every committed offender is eligible for parole upon completion of his minimum term less reductions granted for good conduct. *See* Neb.Rev. Stat. §§ 83–1,105, 83–1,110. The Board of Parole has the duty to determine the time of release on parole of committed offenders eligible for such release and to fix the conditions of parole. Neb.Rev.Stat. § 83–192. The Board is further authorized to issue subpoenas, compel the attendance of witnesses, and the production of documents, and to administer oaths and take testimony. Neb.Rev.Stat. § 83–195.

Every committed offender is entitled to a hearing within 60 days before he is eligible for parole and when parole is not granted the Board is required to provide written notification of the reasons for denial. Neb. Rev.Stat. § 83–1,111. Section 83–1,111 further provides that if parole is denied the committed offender shall receive at least once a year a hearing at which his application is reconsidered. Neb.Rev.Stat. § 83–1,-115 lists the items which are to be considered by the Board in making its determination of whether to release a prisoner on parole. Finally, the Board is directed by Neb.Rev.Stat. § 83–1,114 [3] to release an eli-

---

**3.** Neb.Rev.Stat. § 83–1,114 provides in full:

Board of Parole; deferment of parole; grounds. (1) Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:

(a) There is a substantial risk that he will not conform to the conditions of parole;

(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

(c) His release would have a substantially adverse effect on institutional discipline; or

(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.

(2) In making its determination regarding a committed offender's release on parole, the Board of Parole shall take into account each of the following factors:

(a) The offender's personality, including his maturity, stability, sense of responsibility and any apparent development in his personality which may promote or hinder his conformity to law;

(b) The adequacy of the offender's parole plan;

(c) The offender's ability and readiness to assume obligations and undertake responsibilities;

(d) The offender's intelligence and training;

(e) The offender's family status and whether he has relatives who display an interest in him or whether he has other close and constructive associations in the community;

(f) The offender's employment history, his occupational skills, and the stability of his past employment;

(g) The type of residence, neighborhood or community in which the offender plans to live;

(h) The offender's past use of narcotics, or past habitual and excessive use of alcohol;

(i) The offender's mental or physical make-up, including any disability or handicap which may affect his conformity to law;

(j) The offender's prior criminal record, including the nature and circumstances, recency and frequency of previous offenses;

(k) The offender's attitude toward law and authority;

(*l*) The offender's conduct in the facility, including particularly whether he has taken advantage of the opportunities for self-improvement, whether he has been punished for mis-

gible prisoner on parole unless it finds that release should be deferred due to one of the reasons specified in the statute. Section 83–1,114 also lists the factors to be considered by the Board in making this determination.

■ An examination of Nebraska law reveals that the inmates have a right to be considered for parole, and this right is protected by procedural safeguards created by statute. In *Wolff*, where the state created the statutory right of shortened sentences for good behavior, the Supreme Court held such good behavior credits were to be withdrawn only when certain constitutional safeguards were adhered to. It follows that since Nebraska has made parole an integral part of its penological system and provided that those eligible for parole are to be released on parole unless one of the reasons for denial specified in the statute is found to be present, the authority to deny parole must not be exercised arbitrarily. Neb.Rev.Stat. § 83–1,114 provides the inmates with a justifiable expectation rooted in state law that they will be conditionally released if they meet the statutory standards. Consequently, the Fourteenth Amendment due process clause is implicated. *See Wolff v. McDonnell, supra,* 418 U.S. at 557, 92 S.Ct. 2963. *Compare Meachum v. Fano, supra,* 427 U.S. at 228, 96 S.Ct. 2532; *Montanye v. Haymes, supra,* 427 U.S. at 242, 96 S.Ct. 2543.

We agree with the reasoning of the original panel opinion in *Franklin v. Shields,* 569 F.2d 784, 789–90 (4th Cir. 1977), *rev'd en banc,* 569 F.2d 800 (4th Cir. 1978) (reversed upon the grounds that "the only explicit constitutional requisite is that the Board furnish to the prisoner a statement of its reasons for denial of parole"), where it was stated that:

Since the [state] statutes contemplate that a prisoner who has satisfied all the requirements for parole will be conditionally released, the Board's investigation and review are crucial. A prisoner has much at stake in properly conducted parole proceedings, for they may result in his conditional freedom. If the proceedings are flawed—even unintentionally and in good faith, through reliance on incomplete or incorrect information—they may add years to a prisoner's confinement. Consequently, the accuracy and the sufficiency of the information the Board obtains in its investigation, which the statutes require, can have a decisive effect on parole. Also, whether the Board's review is full and fair, as contemplated by the statutes, may be a determinative factor in the grant or denial of parole. Therefore, we hold that the statutes governing the manner in which a prisoner shall be considered for parole confer on the prisoner an interest in liberty. [Footnote omitted.]

■ In summary, we find that a prisoner in Nebraska has a statutory right to fair parole consideration. Because this right involves the prisoner's liberty interest, the inmate's right to consideration for parole is an aspect of liberty to which the protection of the due process clause extends. Therefore, the minimum requirement of procedural due process appropriate for the circumstances must be observed.

Having concluded that the due process clause is applicable to parole release proceedings, the question remains how much process is due. In this inquiry we are guided by the Supreme Court's observations in *Morrissey v. Brewer, supra.*

It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the

conduct within six months prior to his hearing or reconsideration for parole release, whether *any reductions of term have been forfeited,* and whether such reductions have been restored at the time of hearing or reconsideration;

(m) The offender's behavior and attitude during any previous experience of probation or parole and the recency of such experience; and
· (n) Any other factors the board determines to be relevant. · ·

government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 [81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230] (1961). *Morrissey v. Brewer, supra*, 408 U.S. at 481, 92 S.Ct. at 2600. This balancing test was further refined in *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Court stated that:

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

█ The inmates' interest is the avoidance of arbitrary denial of parole when all of the requirements for release are satisfied. This is indeed a grievous loss. Although the severity of the loss is not a factor in determining whether governmental action implicates the Fourteenth Amendment, it is a factor when considering the extent to which procedural safeguards are required. *Meachum v. Fano, supra*, 427 U.S. at 224, 96 S.Ct. 2532; *Goss v. Lopez*, 419 U.S. 565, 575–76, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *United States ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole, supra*, 500 F.2d at 928.

On the other hand the Board has a substantial interest in releasing a prisoner on parole at the appropriate time. Society suffers both when the prisoner is released before he is fully rehabilitated and when he is kept in prison beyond the time when all purposes of incarceration have been served. Thus, the Board has an interest in seeing that parole is neither granted nor denied on the basis of inaccurate information or an erroneous evaluation. The Board has additional interests. It must be concerned that the procedures adopted do not interfere with the security of the institution or undermine discipline of the prisoners. It must also be concerned about the increased administrative burdens and costs occasioned by the procedural safeguards.

The task facing this court is to ascertain the minimal requirements of fundamental fairness by balancing the interests of the inmates in their statutorily granted expectation of meaningful consideration for parole and the interests of the state and society in the orderly administration of the parole system.

█ We agree with the district court that a parole decision is not a part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply. *See, e. g., Franklin v. Shields*, 569 F.2d 784, 800 (4th Cir. 1978) (en banc); *Haymes v. Regan*, 525 F.2d 540 (2d Cir. 1975). *See also Wolff v. McDonnell, supra*, 418 U.S. at 556, 94 S.Ct. 2963; *Morrissey v. Brewer, supra*, 408 U.S. at 482 n.8, 92 S.Ct. 2593. However, as to the precise procedural safeguards required by the due process clause, we agree completely with neither of the parties nor the district court. We find that the procedures currently employed by the Board are in certain respects constitutionally deficient but the procedures required by *Wolff v. McDonnell, supra*, need not be followed in all respects in parole decisions in state prisons. With the interests of the inmates and state in mind, we will now consider each of the procedural protections required by the district court.[4]

█ In its decision of October 21, 1977, the district court ordered that

---

4. We note that the procedural protections required by this opinion are applicable only to inmates who are eligible for parole. We do not discourage Nebraska from conducting annual record reviews for all prisoners, *see* Neb.Rev. Stat. § 83–192(9), but this case only concerns those prisoners that are eligible for parole.

"[e]very inmate eligible for parole under Nebraska law must be afforded a formal parole hearing." At a minimum, once it is determined that an interest is protected by the due process clause, a hearing for the person affected is required. *See Wolff v. McDonnell, supra,* 418 U.S. at 557–58, 94 S.Ct. 2963; *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed.2d 865 (1950). The inmates contend that the district court required that all inmates eligible for parole be given a formal parole hearing annually. Although the district court's opinion is arguably ambiguous on this point, we understand it to only require a formal parole hearing upon an inmate's first becoming eligible for parole. In any event, we hold that to comply with the due process clause the Board has to provide a formal parole hearing only when the inmate first becomes eligible for parole. Subsequent formal parole hearings need be held only in the discretion of the Board. We, of course, do not discourage the Board from offering more frequent formal parole hearings.

■ The second minimum requirement imposed by the district court concerns the notice to be given to the inmates. It provides that:

At least seventy-two hours prior to the scheduled time of the parole hearing each inmate under consideration must receive written notice of the date and hour for which his hearing is scheduled by the board, which notice shall also include a concise listing of the factors which may be considered in evaluating an inmate for discretionary parole.

This standard actually contains two separate requirements. Initially, we have no hesitation in deciding that the due process clause entitles the inmates to receive reasonable written notice of the date and hour for the hearing. *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. at 313, 70 S.Ct. 652. Under normal circumstances we believe that a minimum advance notice of 72 hours, as mandated by the district court, allows the prisoner a fair opportunity to prepare for his appearance

before the Board. Thus, the current practice followed by the Board of posting notice of the hearing at the institution on the day of the hearing is constitutionally infirm.

■ We also agree with the district court that the notice of the hearing must be accompanied by a listing of the criteria governing the Board's parole decisions. It is only fair to apprise the inmates of the standards to which they must conform if they are to be released on parole. Moreover, the Board offers no justification for not providing this information to the inmates. *See Franklin v. Shields, supra,* 569 F.2d at 791–93; *Childs v. United States Board of Parole,* 371 F.Supp. 1246, 1247–48 (D.D.C.), *aff'd,* 167 U.S.App. 268, 511 F.2d 1270 (1974) (no appeal taken on this point); *Cooley v. Sigler,* 381 F.Supp. 441, 444 (D.Minn.1974). *Contra, Haymes v. Regan,* 525 F.2d 540 (2d Cir. 1975). Neb.Rev.Stat. § 83–1,114 [5] lists the four reasons for which parole may be denied to an eligible prisoner. This section also provides 14 factors to be considered by the Board in making its decision of whether parole should be granted. We find that the statutory criteria are sufficiently specific to enable the inmate to prepare his presentation to the Board. *See Franklin v. Shields, supra,* 569 F.2d at 791–92. We reiterate that a list of the factors considered by the Board must accompany the notice of a hearing given to the prisoner, or preferably by posting the statutory criteria and guidelines in the institutions in a place or places where the inmates will have access to them.

■ The district court also found that to comply with the due process clause "[e]ach inmate for whom a parole hearing is scheduled must be allowed to appear in person before the Board to present evidence in support of his application subject to prison security considerations." In its memorandum opinion the district court held, in reliance on *Wolff v. McDonnell, supra,* that this standard included the right to call witnesses subject to prison security considerations and the need to keep the hearing within limits. We affirm only in part. Subject to prison security considerations an

---

5. *See* note 3, *supra.*

inmate must be allowed to appear in person before the Board and to present documentary evidence in support of his application for parole. *Wolff v. McDonnell, supra; Mullane v. Central Hanover Bank & Trust Co., supra.* This means that in many cases it will be desirable for the Board to give the applicant sufficient notice to secure documentary evidence directed to the Board's function of predicting whether parole will be successful.

Under Nebraska law a prisoner has a right to be considered for parole on the basis of certain statutory specifications. To make this right effective a prisoner must be given the opportunity to personally appear before the Board to explain and amplify the information on which the Board will base its decision. The administrative inconvenience and cost of a personal hearing is not sufficient to deprive the prisoner of this right. Moreover, a personal hearing is also beneficial to the Board and society insofar as the reliability of parole decision-making is enhanced by personal hearings. However, in the absence of exceptional circumstances the prisoner does not have a constitutional right to call witnesses in his behalf in a formal parole hearing. Nevertheless, the Board in its discretion may permit the prisoner to call witnesses. In fact the record shows that currently the Board does allow a prisoner afforded a formal parole hearing to have witnesses. It follows from our holding that a prisoner does not have a constitutional right to confront and cross-examine adverse witnesses. *See Wolff v. McDonnell, supra,* 418 U.S. at 566–69, 94 S.Ct. 2963.

The order of the district court decreed that "[a] record of the proceedings at the parole hearing must be maintained." It appears from the district court's reliance on *Wolff v. McDonnell, supra,* 418 U.S. at 565, in its memorandum opinion that this standard requires that a written record of the proceedings be maintained. Currently a record of the hearings is maintained by the Board in the form of tape recordings. We find that this method is constitutionally adequate provided that the recordings are of sufficient quality to enable the record to be reduced to writing.

The final requirement ordered by the district court is that "[w]ithin a reasonable time following the parole hearing, each inmate to whom parole is denied must be given a full and fair explanation, in writing, of the evidence relied upon and the reasons for denial of parole." We affirm. Every circuit which has held that the due process clause is applicable to parole release determinations has found that the parole board must inform the prisoner in writing of the reasons for denial of his application for parole. *See Franklin v. Shields, supra; United States ex rel. Richerson v. Wolff, supra; Childs v. United States Board of Parole, supra; United States ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole, supra. See also Wolff v. McDonnell, supra,* 418 U.S. at 564–65, 94 S.Ct. 2963.

We agree with the reasoning of the Second Circuit that for a statement of reasons to satisfy minimal due process requirements "detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision * * * and the essential facts upon which the Court's inferences are based * * *." *United States ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole, supra,* 500 F.2d at 934. *See United States ex rel. Richerson v. Wolff, supra; Cooley v. Sigler, supra,* 381 F.Supp. at 443; *Candirini v. Attorney General,* 369 F.Supp. 1132, 1137 n.8 (E.D.N.Y. 1974). *Cf. Franklin v. Shields, supra,* 569 F.2d at 797–98 n.59, 801. The present practice of the Board is deficient in that an inmate is not informed as to the essential facts relied on by the Board in reaching its decision.

Providing a prisoner with the reasons for denial and the essential facts relied on will serve at least four purposes. Firstly, it will facilitate judicial review in those situations where it is allowed. Secondly, it will promote thought by the Board members and will compel them to cover the relevant points and eschew irrelevancies. Thirdly, it will promote the goal of rehabilitation by relieving the inmates' frustration by instructing them how they might by improving their prison behavior or taking steps

with respect to some other factor (e. g., prospective employment or housing), better their chances for release. In some situations a prisoner is not considered fit for parole because of a factor such as a long history of recidivism which the prisoner will not be able to remedy even if the Board states its reasons in writing. Nevertheless, a statement of reasons is important in those situations because it will show that the Board has not acted arbitrarily. Finally, by requiring the Board to state its reasons for denial a body of rules, principles and precedent which will promote consistency by the Board will be established. *United States ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole, supra,* 500 F.2d at 929, 931–33; *Cooley v. Sigler, supra,* 381 F.Supp. at 443. *See also Childs v. United States Board of Parole, supra,* 511 F.2d at 1281–84; *Mower v. Britton,* 504 F.2d 396, 398–99 (10th Cir. 1974); *King v. United States,* 492 F.2d 1337, 1340–42 and n.11 (7th Cir. 1974).

In summary, considering the Nebraska statutes governing parole and after weighing the interests of both the state and the prisoners, we conclude that as a minimum the due process clause of the Fourteenth Amendment requires the following: (1) Every inmate is to receive a formal parole hearing upon first becoming eligible for parole. Subsequent hearings are to be allowed in the discretion of the Board. (2) Each inmate is to receive a written notice of the date and hour of the hearing reasonably in advance. This notice shall contain a list of the factors which may be considered by the Board in making its determination. (3) Subject to security considerations, every inmate is allowed to appear in person before the Board and present documentary evidence in support of his application. In the absence of unusual circumstances an inmate does not have a constitutional right to call witnesses in his behalf. (4) A record of the proceedings which is capable of being reduced to writing must be maintained. (5) Within a reasonable time following the hearing, each inmate to whom parole was denied must be given a full and fair explanation, in writing, of the essential facts relied upon and the reasons for denial of parole.

The district court by its order of January 4, 1978, allowed an award of attorney fees of $3,000, plus expenses of $212.77, to be included as part of the taxation of costs against the Board under the provisions of 42 U.S.C. § 1988. We follow the ruling of this court in *Finney v. Hutto,* 548 F.2d 740, 742 (8th Cir.), *cert. granted,* 434 U.S. 901, 98 S.Ct. 295, 54 L.Ed.2d 187 (1977) (No. 76–1660), that the Eleventh Amendment does not prohibit an award of attorney fees under section 1988 against a state agency although it is not a named party to the lawsuit. The district court did not abuse its discretion in awarding fees to the inmates in this case. *See Wharton v. Knefel,* 562 F.2d 550 (8th Cir. 1977). Accordingly, we affirm the award of attorney fees against the members of the Board in their official capacities.

The decision of the district court is affirmed in part, and reversed in part. The case is remanded to the district court which in turn should remand to the Board of Parole for the purpose of drawing up regulations implementing the guidelines set out in this opinion.