**Douglas K. ESKRIDGE, Plaintiff,**

v.

**Oliver W. CASSON, Sarah Jastak, Margaret Scrivens, J. Franklin Gordy, William Pfeifer, Defendants.**

**Civ. A. No. 79–1.**

United States District Court,
D. Delaware.

Feb. 13, 1979.

Douglas K. Eskridge, pro se.

John A. Parkins, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for State of Delaware.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

The plaintiff, Douglas K. Eskridge, is a state prisoner who is presently incarcerated at the Delaware Correctional Center in Smyrna, Delaware. On December 18, 1978 he presented a *pro se* complaint to this Court based on 42 U.S.C. § 1983. In that complaint he asserted that the named defendants[1] denied his application for parole in a manner which violated his right to due process of law. Specifically, he alleges: (1) that he was denied a "meaningful" parole hearing because he was not allowed to "inspect and object to erroneous or misleading facts used by the Board"; and (2) that the Board's decision was arbitrary and capricious because it did not follow the Department of Corrections' ("Department") favorable recommendation, and because some of the reasons the Board gave for its decision were factually baseless or legally impermissible.[2]

■ Initially, it should be noted that to the extent that plaintiff's general request for equitable relief amounts to a prayer for immediate release from custody it would not be cognizable under § 1983. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Woodhouse v. Board of Parole,* No. 78–504 (D.Del. November 22, 1978). A writ of habeas corpus is the sole federal remedy that is available to a state prisoner who is seeking immediate release from imprisonment. *Preiser, supra,* 411 U.S. at 500, 93 S.Ct. 1827. Furthermore, that remedy is not available unless the petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(b). Since, however, Delaware does not provide any procedure by which a prisoner may challenge a decision by the Board,[3] the exhaustion requirement has been met in this case and the plaintiff's complaint can be considered as a whole. *See,* 28 U.S.C. § 2254(b) & (c); *Woodhouse v. Board of Parole,* No. 78–504 (D.Del. November 22, 1978).

## I. THE PROCEDURAL DUE PROCESS CLAIM

The plaintiff claims that he has a right, under the Due Process clause, to inspect any material or information that the Board is going to consider and to dispute the accuracy of that material or information. That claim raises the question of whether the Due Process clause applies to parole release determinations.[4]

Several courts have held that the Due Process clause does apply to parole release determinations. For example, in *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925, vacated as moot, 419 U.S. 1015, 95 S.Ct. 488,

---

1. Oliver W. Casson is the Chairman of the Delaware State Board of Parole ("Board"). The other named defendants are all members of the Board.

2. The Board gave six reasons for its decision. They were: (1) prior arrest record; (2) prior failure under supervision; (3) history of narcotic involvement; (4) poor work history; (5) unresolved employment plan; and (6) the relatively brief period of time served considering all of the above factors. *See,* Docket Item 1, Exhibit A.

3. The Delaware Parole Statute does not provide for any type of review of the decisions made by the Board. *See,* 11 *Del.C.* §§ 4341–4353. In addition, it appears that a prisoner could not challenge a Board decision by means of a state Writ of Habeas Corpus. *See, Moore v. State,* 171 A.2d 215 (Del.Sup.Ct.1961); *Curran v. Wooley,* 104 A.2d 771 (Del.Sup.Ct.1954).

4. This Court recently noted in *Woodhouse v. Board of Parole,* No. 78–504 (D.Del. November 22, 1978) that the United States Supreme Court has never decided the question of whether the Due Process clause applies to parole release decisions, and that the lower federal courts, which have decided it, have reached differing results. *See, Scott v. Kentucky Parole Board,* 429 U.S. 60, 97 S.Ct. 342, 50 L.Ed.2d 218 (1976) (Stevens, J., dissenting). The question may soon be resolved, however, because the Supreme Court recently heard argument in a case which raises this issue. *See, Inmates of the Nebraska Penal & Correctional Complex v. Greenholtz,* 576 F.2d 1274 (C.A.8) *cert. granted,* 439 U.S. 817, 99 S.Ct. 76, 58 L.Ed.2d 107 (1978).

42 L.Ed.2d 289 (1974), the United States Court of Appeals for the Second Circuit noted that the Supreme Court had held in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), that a person on parole enjoyed a type of " 'conditional liberty' " which was entitled to due process protection. The *Johnson* court therefore concluded that:

A prisoner's interest in prospective parole, or "conditional entitlement" must be treated in like fashion. To hold otherwise would be to create a distinction too glossamer-thin to stand close analysis. Whether the immediate issue be release or revocation, the stakes are the same: conditional freedom versus incarceration.

500 F.2d at 928.[5] This Court does not read *Morrissey v. Brewer* that broadly and it therefore respectfully disagrees with both the reasoning and the holding of the *Johnson* decision.

The Supreme Court's decision in *Morrissey* was based on the fact that a person out of prison and on parole enjoys a significant amount of "conditional liberty." As the *Morrissey* Court noted, a person on parole:

can be gainfully employed and (he) is free to be with family and friends and to form the other enduring attachments of normal life.

408 U.S. at 482, 92 S.Ct. at 2600. The *Morrissey* Court, therefore, held that a state could not revoke a person's parole and thereby deprive him of that conditional liberty, without first providing for "some orderly process." *Id.*

■ That holding, however, does not apply to a parole release determination. A person who is incarcerated obviously does not enjoy the same conditional liberty that is enjoyed by a person who is free on parole. A decision denying a person parole, therefore, clearly would not *deprive* that person of any existing conditional liberty.[6] *See, Brown v. Lundgren,* 528 F.2d 1050, 1052–53 (C.A.5), *cert. denied,* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976); *Shaw v. Briscoe,* 541 F.2d 489 (C.A.5, 1976).

■ A decision denying a person parole does, however, deprive the person of a possible prospect of enjoying the conditional liberty which comes with a release on parole. Such a deprivation would violate the Due Process clause if the person had a legitimate claim under state law of an entitlement to the conditional freedom that comes with a release on parole. *Wolf v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Williams v. Missouri Bd. of Probation and Parole,* 585 F.2d 922, 924 (C.A.8, 1978); *Inmates of Nebraska Penal and Correctional Complex v. Greenholtz,* 576 F.2d 1274, *cert. granted,* 439 U.S. 817, 99 S.Ct. 76, 58 L.Ed.2d 107. The basic question in this case, therefore, is whether the Delaware Parole statute grants an entitlement to convicted prisoners to a release on parole.

The Delaware Parole statute establishes a comprehensive framework for the parole process in Delaware. *See,* 11 *Del.C.* §§ 4341–4353. The operative section for the purposes of this issue is Section 4347. That section provides that the Board [7] *"may"* grant a parole to an eligible [8] prisoner:

---

5. *See also, Williams v. Missouri Board of Probation and Parole,* 585 F.2d 922 (C.A.8, 1978); *Inmates of the Nebraska Penal & Correctional Complex v. Greenholtz,* 576 F.2d 1274 (C.A.8) *cert. granted,* 439 U.S. 817, 99 S.Ct. 76, 58 L.Ed.2d 107 (1978); *Franklin v. Shields,* 569 F.2d 784 (C.A.4) (en banc), *cert. denied,* 435 U.S. 1003, 98 S.Ct. 1659, 53 L.Ed.2d 92 (1978); *United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (C.A.7, 1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976); *Childs v. United States Board of Parole,* 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974).

6. Nor does it appear that a denial of parole would deprive a person of any of the other interests that have been traditionally viewed as liberty interests. *See Board of Regents v. Roth,* 408 U.S. 564, 572–73, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *McKnight v. Septa,* 583 F.2d 1229, 1235–1236 (C.A.3, 1978).

7. The statute provides that there shall be a "Board of Parole" which "shall consist of 4 members . . . and a chairman"; and that the Board "shall [b]e the paroling authority for the State." 11 *Del.C.* §§ 4341(a) & 4343(1).

8. A person is eligible for parole:

if he has served ⅓ of the term imposed by the court, such term to be reduced by such

when *in the opinion of the Board* there is *reasonable* [sic] *probability* that the person can be released *without detriment to the community* or himself, and where, *in the Board's opinion,* parole supervision would be in the *best interests of society* and an aid to rehabilitation of the offender.

11 *Del.C.* § 4347 (emphasis added).

The language used in section 4347 clearly indicates that the Delaware law gives the Board virtually unfettered discretion [9] with regard to parole release decisions.[10] This indication of unfettered discretion is reinforced by the fact that the Board is not required to state the reasons for its decisions, and by the fact that no procedure is provided by which an appeal can be taken from the Board's decisions. This Court concludes, therefore, that no prisoner can legitimately claim that the Delaware Parole statute confers upon him a legally enforceable right to be paroled.[11] *See, Leis v. Flynt,* —— U.S. ——, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The plaintiff in this case, therefore, had neither an independently existing nor a state created liberty interest at stake in the parole release determination, and consequently his claim of a denial of procedural due process is frivolous.

## II.  THE SUBSTANTIVE DUE PROCESS CLAIM

The plaintiff also contends that his due process rights were violated because the Board's decision was arbitrary and capricious. That claim is frivolous for two reasons.

■ This Court has held that the Due Process clause does not provide any substantive protection from state action unless the challenged action deprives the person of a liberty or property interest. *Winsett v. McGinnes,* 443 F.Supp. 1369 (D.Del.1978). In the present case the Court has already held that the plaintiff was not deprived of any liberty or property interest by the Board's action of denying him parole. That holding thus precludes a finding that the plaintiff's substantive due process rights were violated.

■ But even if it is assumed that the substantive protections of the Due Process clause do apply in this case,[12] the plaintiff's claim would still be frivolous, because all of the arguments advanced by the plaintiff in support of that contention are meritless.

The plaintiff's first argument is that two of the six reasons given by the Board in support of its decision are factually inaccurate. Specifically, he claims that he had no prior arrest record and no history of narcotic involvement. However, in response to the interrogatories of this Court, plaintiff admitted that he had at least five prior arrests and that two of those arrests were

---

merit and good behavior credits as have been earned, or 120 days, whichever is greater. 11 *Del.C.* § 4346(a).

**9.** There are two objective limits which are placed on the Board's authority. They are: (a) that it see and interview a person before it grants that person a parole; and (b) that it not grant a parole to any person who has been convicted of certain types of offenses, until it has considered psychiatric and clinical studies and it is convinced that the person will not commit another crime. 11 *Del.C.* §§ 4347(c) & 4353.

**10.** The *Williams* and *Greenholtz* decisions cited above are thus distinguishable from the present case because the parole statutes in those cases provided that parole *had to* be granted unless the prisoner was found to be unfit for one of

the reasons listed in the statute. *See, Williams,* 585 F.2d at 924; *Greenholtz,* 576 F.2d at 1281.

**11.** The Court reaches the same conclusion with regard to the policy and procedure rules adopted by the Board pursuant to 11 *Del.C.* § 4343(2). *See,* Policies and Procedures of the Board of Parole, State of Delaware, 1974.

**12.** Both this Court and the United States Court of Appeals for the Third Circuit have reviewed parole denials in the past. *See, Zannino v. Arnold,* 531 F.2d 687 (C.A.3, 1976); *Woodhouse v. Board of Parole,* No. 78–504 (D.Del. November 22, 1978); *Garvey v. Casson,* 423 F.Supp. 68 (D.Del.1976). Neither this Court nor the Third Circuit, however, has ever specifically held that a review is mandated by the Due Process clause.

for possession of various drugs. Docket Item 4, ¶ 5. The plaintiff's first argument is, thus, clearly meritless. *See, Garvey v. Casson,* 423 F.Supp. 68, 70 (D.Del.1976).

The plaintiff's second contention is that the length of time served is a factor which may not be considered by the Board in order to support its decision. That argument has been rejected by this Court in the past and it need not be reconsidered here. *See Woodhouse, supra.*

The plaintiff's final argument is that the Board's decision was arbitrary and capricious because it "contradicted" the Department of Corrections' recommendation that he be paroled. That argument is patently frivolous.

The Board is given the responsibility under Delaware law of determining whether or not a committed prisoner should be paroled. The Board was under no obligation to follow the Department's recommendation and its failure to do so in this case cannot be classified as either arbitrary or capricious.[13]

The Court concludes, therefore, that both of the plaintiff's claims are frivolous and consequently his complaint will be dismissed pursuant to 28 U.S.C. § 1915(d).

---

13. Mr. Casson's December 1st letter to the plaintiff clearly states that the Department's recommendation was considered and it explains why it was not followed. *See* Docket Item 1, Exhibit A.